18-0677 Douglas v. Warlick, Associates, Plaintiff-Appellant, v. Carmella, R. Mordkovich, Henson v. Buchanan, Williams v. Dependents, Appellees. Arguing on behalf of the Plaintiff-Appellants, Mr. Douglas v. Warlick. Arguing on behalf of the Appellees, Mr. Vince Brackett. Mr. Warlick. Good morning, Justices. Good morning.  Mr. Warlick, you received our notification directing the parties to discuss the propriety of the court's 304A fining and the AT&T case. I have. Can you address that issue, please? I have. Do you want me to introduce myself for the record? Yes. I'm Chris Warlick, as well as Colin Thomas, on behalf of my law firm and myself, as outlined. May it please the Court, I did receive, to answer your question, a directive of order to research and to comment on the appellate jurisdiction, and I'm prepared to do that before I get into the arguments. So, we might start with that right now. The AT&T v. Lyons case, the second district case, found that the trial court had abused its discretion in granting the 304 language, but in that case, on the record, the trial court acknowledged that it was doing so, it was granting the appellate voting language because, for its own selfish reasons, it was stated that the judge wanted to answer a question for not only himself, but for the other judges on the floor, and it was stated that the court was not even certain that the appellate court would accept jurisdiction. I think that's the essence of the AT&T case. Of course, this goes much further when you dig further. There's about 10 cases that I found that were really instructive on that issue, and I'm afraid to use all my time by discussing all the 10 cases. Well, you better convince us otherwise, because that's the reason we notified the parties. And it's been a little bit of a long process. With regard to your claim, the claim is 13 counts, but it's all about attorney's fees, correct? It is. And the promissory estoppel claim was left at stand, correct? Promissory estoppel, conversion, unjust enrichment. And all of those would have overlapping evidence, correct, in the same – in the counts that were dismissed. Am I correct? You're correct, Your Honor. However, if we use the pyramid, they would have less overlapping evidence than the counts that were dismissed. The counts that were dismissed, the breach of contract, breach of fiduciary duty, I would suggest are the principal counts and the counts that would be the most important to trying this case and to presenting the evidence in this case. Does it have to be significant overlap, or is it any overlap? Your Honor, I believe in reading the cases that it's – it would have to be significant, but I also read that a little bit differently in the Geier factors. And I know what Your Honor is talking about. You know, there's a test of finality and appealability. Finality test is pretty obvious. You know, there's a final disposition, an ultimate disposition, so it's final. But the appealability question is assessed by looking at the five Geier factors. Did the Court address the Geier factors when making her ruling? The trial court in this case did not. Did not. But I would suggest, Your Honor, that among the cases I read, and I can't put my finger on which case said this, in assessing whether or not the court has used its discretion, the trial court used its discretion in granting the appealability language, the Court is not required to set forth the bases for the Court's decision. In this case – But unfortunately, she did. She said maybe it's time to see what the appellate court thinks. That's – you know, we don't just do it because it's something for us to do. We do it because it's final and appealable. I respectfully agree and disagree in part with Your Honor. The court, the trial court, in this manner, stated some reasons why the court felt it was appropriate to send the case up at this time. The court stated, I believe, that this would be – I don't want to litigate this piecemeal. I don't want to have this issue come back later. I want to narrow the issues now. I think this needs to be resolved. And wouldn't a 308 then have been the appropriate remedy measure for the court? So a certified question under 308 versus 304A? Your Honor, that's a great question. I don't believe a 308 would have resolved this because the questions are far too many. One of the Geier factors, it would come into play, I believe, in the – if you analyze the cases that are, you know, been adjudicated or will be adjudicated, one of the factors when you look at that is I think it's fair to look at what happened in the first – the related first district appellate court case of Markovitch versus Tishman Spires. It's my position that that case has wrongfully plagued this litigation. It's my position that that case is haunting this case and will continue to haunt it. And it's my position that the trial court was very, very mistaken in believing that that case in any way resolved the issues in this case. You will see if I get to that point in my argument that the Markovitch decision, the first district case, not only doesn't say that there's no contract, it actually says the opposite. It actually says that there was a contract, that there was an equitable lien law, that we know that if the obligation is, you know, you're supposed to pay this debt or this obligation from or out of a fund, that that doesn't satisfy the requirements in equitable lien law. We know that. Well, that's what the appellate court found in the first district, that there was not an equitable lien because the proceeds, the court concluded, were not a specified part, proportion, or percentage of the fund, of the personal injury proceeds. And because they said the rest was gone, the fact is by the time we got there, the proceeds were distributed. And when finding that, what they said was that although this does not satisfy the requirements to judicially create an equitable lien, they said, and I could quote the case, that the obligations from the encumbrance documents, in other words, not the underlying retainer agreement, but the court said, and the first district court said, the obligations from the encumbrance documents, that there was a duty to pay from the personal injury proceeds. Obviously, I can quote the exact language, but I know Your Honors have read this case. My point is that we've been stating over and over again that there's nothing that vitiates the underlying contract. There's nothing, there's no authority that would vitiate the underlying contract. And in preparing for this, it occurred to me that I needed to stop making the double negative, there's nothing that vitiates, and I need to put it in the affirmative, and that's what it did. So how this dovetails back into the Geier factors, Your Honor, is that if this court sees fit not to grant appellate jurisdiction and does not review the propriety of the appropriateness of the breach of contract action, then the first district appellate court decision is going to continue to plague this case. Okay. You made that point. Let's talk about the Geier factors. There's clearly a relationship between the claims, correct? There is a relationship. I think there would be in just about any lawsuit, yes. Let's go through the factors. Is there a possibility that the need for review might be rooted as a result of the trial on the other claims? There's no possibility. Why? You mean that you're thrown in a towel, you're going to lose on the other claims? No, I'm saying that the ultimate disposition, it could not possibly be the same without the two principal counts. The two principal counts are breach of contract, breach of fiduciary duty. The scope of the evidence, the scope of the discovery will be governed by those counts. If the scope is narrowed in such a fashion as to only permit counts like unjust enrichment, things could be laid out innocently as opposed to somebody had an obligation and ignored that obligation. So what would happen is we'd go to trial, we'd finish the trial, and then we'd not only have to come back to appeal and then to retry the case, but we'd have to come back to opening up discovery that had been foreclosed because the scope of objections all along. So your point is that we may not ever have an opportunity to review those issues then? We may not ever have. If you were to go back and you say we don't have jurisdiction, you go back and you try the case on the pending claims, you've preserved your arguments on the dismissal. I believe I understand. We are supposed to avoid piecemeal litigation and follow the language of 304A. I totally agree with you. That is exactly what the case law says. Your Honor, what I'm suggesting is that what would happen would be much more burdensome, much more costly. It's one of the dire factors to take into consideration. That's the last one. It's because you would have us go through the entire case, the discovery phase, the trial phase, only to have to come back now and reopen discovery. Why did you reopen discovery? Do you mean come back here or go back to the trial court? Back to the trial court because if there was an appeal later and if it was determined later that the breach of contract count or the breach of fiduciary counts were improperly dismissed and those were the chief counts, then that appeal is going to be taken up after the trial. But if scope objections have limited the evidence that was adduced at trial and if scope objections have limited the amount of discovery that you could have had in the course of this litigation, you're not only going back and retrying a case, you're going back and opening up discovery. The fifth factor. You'll be a witness in the case, correct? I would be. So somebody else will have to try the case. That's correct. Okay. Let me ask you this. Why didn't you pursue your fees in the family law case? Well, they were pursued in the family law case through a petition that was brought and eventually dismissed. But the point of the equitable lien and how this started was when the custody case was moving forward and the fees became higher and higher, it was the client, Markovitch, who suggested, and I believe this is in the record, suggested that we investigate paying the fees in the same manner that she'd borrowed other monies against her personal injury case. She furnished the initial templates for these documents that would be called or now called the encumbrance documents. And initially, it seemed okay to do that. But as the custody case grew and as the financial issues grew and the expenses grew, it became more and more precarious to just rely on the goodwill of somebody. And then, thus, there's actually three contracts here. There's the initial encumbrance documents. There's the second contract, which arises through the irrevocable letter of direction. The initial encumbrance documents, the only contract there is between Markovitch and my law office. The second contract that arises between Markovitch and can I call him KML? Would that be best because that's how they're referred to in the briefs? So Luca Cioni's office, KML, that contract was between them because in the course of the scope of their representation of her, she had the right as their client to direct how those, to make a direction within that scope, to do this, to honor the irrevocable letter of direction. But as you are laying this out, something, and as we considered this case and it was laid out, you know, on the record before us, it's critical, isn't it, that we determine if there is a contract in fact with Markovitch and we can't do that because she's not part of this litigation at this time. Right. And that's why without that resolution, there are problems with, there appear to be problems with the other issues. I don't believe that that's.  I'm sorry. If there was a contract with her, according to this record and according to your position, she breached that contract by telling, by withdrawing her agreement that you be paid. So doesn't that have to be litigated first before we can litigate some of these other things? I respectfully say no, and the reason I say that is because this case right now, first, that case is on hold because of the bankruptcy adversary procedure. But this case right now is Warlick v. KML. And the contract between Markovitch and Warlick, not the initial retainer agreement, but that contract in the encumbrance documents, that's never been an issue as to whether or not that's a valid contract. But that's not an issue here. What's at issue is the contract between Markovitch and her attorneys through the irrevocable letter of direction. And it's not Markovitch who breached it. It's the attorneys. It's KML. Is there a contract, then, subsequent between you and Mr. Liguccioni? Then there's a contract between Warlick and KML. It's set forth that initially it's probably an oral agreement. I've never argued that. I'm not going to maintain it's an oral agreement now. But I think it was an oral agreement that was memorialized in the 12-13-13 letter, subsequently ratified and reaffirmed in the April 23, 2014 document, the acknowledgment of lien. So there are really a series of agreements here. There's three separate agreements. And I believe, Justice Hutchinson, that the Markovitch contract is not going to be an issue that would affect in any way going forward with this. I know that because that's on hold due to the bankruptcy. Well, I'm thinking off the top of my head because I've never thought about this before. But what occurs to me as I'm thinking about your question, Your Honor, is that that would not even be relevant as to whether or not KML breached their obligations to honor the irrevocable letter of direction or their obligations to honor the agreements with my office. So if, assuming arguendo, it could be said that there was something invalid about the encumbrance documents, that wouldn't even change the evidence for the cause of action from my office against KML. But how about if your client, Markovitch, and I think there was evidence that she instructed Luccioni not to pay, correct? Your Honor, there is an allegation that there's a judicial admission that arises out of a statement that starts with ostensibly, and as we know, ostensibly is a synonym for apparently. And we know that the definition of a judicial admission is something that a concrete fact that one has personal knowledge of. And you can't have personal knowledge of somebody else's intent. And something ostensibly is not a judicial admission. So I just fully dismiss that entire. You just confused me terribly. I beg your pardon? I said you just confused me terribly. Let me ask the question again. Is there any evidence or can she testify that she told Luccioni not to pay you? Would that change things? No. Because Luccioni didn't have that option. There are rules of professional conduct, Rule 1.15D and E. When the KML law firm had knowledge that there was a potential dispute and then a real dispute if she indeed did that, if she indeed said,  Well, we can't do that. Yes, you are our client. But remember, you entered into a contract with pursuant to your revocable letter of direction that not only bounds you, but it also bounds our law firm because we subsequently entered into a contract with the Warlick Law Firm in which we said we would honor that agreement. Well, that promissory estoppel case is still out there. I understand what you're saying, Your Honor, but promissory estoppel is still such a weak, probably a difficult case to prove and such a weak cause of action. Be careful. You're a witness. When you say those things, this is being recorded. Thank you, Your Honor, and I appreciate that. But relatively speaking, I'm making the assumption that the breach of contract cause of action survives. And if it does, then there's a right to a jury trial. I'm not so sure that there's a right to a jury trial if all there are is equitable claims. I think the court has discretion then whether or not to grant the jury trial, and the court could well say you don't get a jury anymore. That's another reason, and under the Geier effect is why that should be resolved now. But suffice it to say, back to the point, the strongest case to a jury is somebody agreed to do something and they didn't do it. The second strongest case is somebody had a legal obligation to do something and they didn't do it. And under the rules of professional conduct, as I was saying before, the 1.15 D&E, Luca Cioni didn't have the option to not hold the monies. Not only was that true under the assignment of lien, not only was that true under the numerical letter of direction, not only was it true under the 12-13-13 letter in the 4-23-14 agreement, but it was true pursuant to the rules of professional conduct. And so, I mean, to answer the question, no, there really would not be an issue as to who caused the breach for the funds not to be held and not to be paid. The responsibility ultimately lands on KML. I hope I answered that question. Should I go on? You can wrap up. You want me to talk about the court? You can wrap up, I think. Your time is up. I wanted to make a couple of quick points so they're going to be a little disjointed. But one of the problems, as I see with this case, is the issue with labels. And the International Supply Company v. Campbell is a case cited by the affiliate. They said labels are not dispositive. And think of the difference right now if the label, if it didn't say assignment of lien. Think of what if the document said first amended assignment of personal injury proceeds from the Markovich v. Tishman Spires Properties lawsuit in favor of Douglas B. Worley. And what if we substitute the word, for the word lien, we substitute the word personal injury proceeds throughout those documents? And that's not a crazy idea, Your Honor. It's not an idea that makes me sound silly or foolish. It's exactly the contract. It's precisely what the parties agreed to. They agreed to assign the personal injury proceeds. So the fact that there's a label that maybe describes something a little differently, if the label is not dispositive, what's the intent of the parties? It's regarded from the language in the contract and the circumstances surrounding the contract. And there's no question but that that was what the contract was for. And if you take that even, you know, I won't belabor this, but the document signed by the KML law from the acknowledgement of lien, if it said acknowledgement of assignment of personal injury proceeds, could they still stand there in good faith and look you in the face and say those obligations were illusory? So to depend on the label is silly. I pointed out that there's three different contracts. I believe that your second district case in the village of South Belgium versus a waste management company, I used that case as a guideline, and I know full well that we complied with all of those obligations. Most important, because we covered the breach of contract, is the breach of fiduciary duty. The comfort for that, Your Honor, has several different avenues in which to get there. There is a breach of fiduciary as a matter of law in the agency relationship, and as much as KML voluntarily undertook to honor the security agreement. Then there's a second breach of fiduciary duty. Your time is up, but go ahead, wrap up, because you're going to have time for rebuttal, but you don't have to regurgitate your brief. No, I'm not. I don't think that this is in the brief. The second one was as a matter of law. If it's not in the brief, then don't argue. I didn't say it's not stated like this, so I don't think that it jumps out. I don't think I'm arguing anything that's not. Okay. Mr. Warlick, finish up. Okay. I'm sorry, Your Honor. If you want, I'll just stop. We have other cases on the call. So the breach of fiduciary duty has several ways to get there. That was my point. Thank you very much, Your Honor. I apologize. That's fine. Mr. Brown. Yes. Mr. Brown, before we get too far into this, did you or whoever was standing for the trial court object to a 304A finding? It was me, and I did object. On what basis? What's that? On what basis? I just didn't see any reason for the case to go up. And quite frankly, I was not thinking about the Geier factors at that time, but our attitude was we wanted to get into depositions. We wanted to get into discovery and get to the facts of the case. With that said, we got the directive from the Second District, and I started looking into it. And I think when we filed our brief, our attitude was, well, if it's discretionary, should we exercise your discretion properly? So we did submit a supplemental statement. Looking at the Geier factors, though, it appears, as a litigant, I would like to state here and get a ruling, that it appears that it's probably right for dismissal. In the Geier factors, I'll go through them briefly. It's a little unusual. Typically, in a 304A setting, you see the defendant moving for that finding. They'll have the claims just this. They want to take it up. They want some finality or make the appellant take it up. But here it's a little bit different. The appellant does have the burden of proof. Factor one, and I don't know that any factor is dispositive, but factor one is pretty important in terms of the overlap. And the case law does talk about a significant overlap. But here, everything revolves around the assignment of lien documents. Everything from our standpoint revolves around the Morkovich First District opinion, which said there's no equitable lien. So all the facts are pretty much germane to every count, and we can't escape that. You know, they go through the entire case. And the third or the second factor, the possibility that review might or might not be mooted by future developments, I think it's highly unlikely. I think this case, unfortunately, is going to get back to before you at some point, regardless of what happens. And not to, I don't know what the right word is, but this case is just a level below attorneys fighting about fees. You know, we know how those cases are. Some of those do resolve, and I suspect we're going to be right back up here before you. The factor about counterclaims does not apply. Miscellaneous factors is very amorphous, and Judge Bowles noted she did list some reasons in the record. The case law is pretty clear. She doesn't have to say I'm analyzing factor three or analyzing factor four, but she wanted to know exactly what was at issue. One time around, she thought, send it up, get some finality. Wouldn't she have been better off to do that through a 308 language? Quite frankly, she could have done that. She would have discretion to, but I don't see this as a 308 case. Too many facts for 308, isn't it? Well, also, it's a substantial, you know, legal question, substantial ground for difference of opinion. This is very fact-based, and the elements aren't too complicated. That's not a clear legal question, in other words. Correct. Go ahead. Well, the other problem, when I read what she said, I thought she was talking more about the pleadings. What's really at issue here? Because there were several roundabouts on those pleadings, correct? There were. And that still might be an issue if this goes back. I'm not – because pleadings can be amended at any time prior to judgment, so there still could be roundabouts about that. But she was pretty clear that she just didn't think the pleadings were sufficient in a lot of ways, and she was trying to figure out what the real issue was here. In part, I believe, I mean, there were two new counts that she ended up dismissing with prejudice. We don't believe any amendment would make a cause of action. Potentially, there could be one of them. But she did have that thought process. And, I mean, ultimately, I think she just wanted to get some guidance, you know, from the appellate court. But, again, looking at the Geier factors, and, again, as a litigant sitting here, having lived with this case, having done the research, worked on the briefs, it would be great to get a decision. But I understand every case that gets before you is just like that. You know, sometimes you get a case, and the certification is not correct, and it's got to be sent back down. I'd like to get some other issues, unless you have any other questions on the 304A. Well, what about the – I don't know that you've discussed the five factors. Sure. Such as delay, economic, and solvency considerations. You know, that's a very amorphous factor. And I kind of touched on that in the sense that, I guess, the miscellaneous factor would be we've done all this work, we've prepared the briefs, the issues are ripe for review. So that's kind of a miscellaneous factor. But the flip side of that is every case is like that. Well, there's a fairly good-sized chunk of change sitting somewhere in this particular case. I think we're up to, what, 220-plus something? Yeah. So that's a rather significant economic consideration. If we don't decide this, it has to go back and this all starts over, or it gets ready for trial, basically. Well, if we go back, and we have not even gotten into discovery yet. We're on the cusp of that. And that's why initially we objected. We want to get to depths, get to discovery, and then figure out the facts of the case. And the funds are, there's a mention in the brief that Mr. Lucaccioni may still have the funds. It's clear from the Morkovich decision and in the complaint itself that the funds were distributed. Well, how long after this PI settlement was the bankruptcy filed? Quite a while afterwards. The funds were distributed to Mrs. Morkovich, and then the bankruptcy filing, I believe, was sometime in 2018. It was during the pendency of the case after Mr. Orlick had filed a lawsuit, filed a first-amendment complaint, added in KML and KML limited. And then when we appeared, we learned about the bankruptcy after that. So 2018, I believe. And the PI settlement was what year? That was back in 20, I may be misspeaking, but 2015-ish? I think it was May of 2015. May of 2015. May 28th. There may be some claims to that money through bankruptcy, too. Potentially. I mean, three years from bankruptcy is not a long time between receiving those funds. And I can't speak to where the money went. May I proceed? Go ahead. Any other questions on 304A? Well, what about counsel made the argument that if we don't hear this case, you may be deprived of the right to a jury trial? May be deprived? May not be entitled to a jury trial. That was Mr. Orlick's comment. Well, I don't. You know, actually, in the underlying case, I don't know if a jury demand has been filed. It could be a bench. But that wouldn't deprive anyone to a jury trial. There's still counts pending that are going to be tried. You know, and unfortunately, depending on what happens to those counts, it may come back up and we end up retrying it. But it still has the right to a jury trial or to a bench. Was there a contract between your law firm and Mr. Orlick? There was not a contract. And I'd like to bring that up. Number one, we've explained this in our brief, and that was the basis for Judge Bull's ruling, that there was no – Mr. Lucucione is not a signatory to any contract with Mr. Orlick or his firm. There was an acknowledgment. There was correspondence saying that we recognize your lien. Those letters go out every day in personal injury cases to get liens. We recognize your lien. We acknowledge it. When we get to the point, we'll figure out if it's valid and legitimate and resolve it. But there was no contract. Isn't there a letter – maybe that's the letter that Mr. Orlick talked about that was later in time where there was some language about protecting it, we will continue to protect it? Yeah, and the use of the word continue to protect, that use of the terminology rise to the level of a contract, there's this argument that simply a letter saying it will protect something is not a contract. And the Morkovich in the First District talked about, in that case, they did not say there was a contract, and they did not say there was a duty to pay that was represented to you. What they said was there was a mere promise to pay in that case. How about professional responsibility 1.5 that he's relying on? Well, there's 1.5D, which involves the direction of the client, and 1.5E, which talks about if there are competing claims that you set aside into an account. And that analysis comes into play in the case. And what happened here – and I'm going to parlay into one other issue while I do this. Mr. Lucaccioni, when he received the funds, had to make a decision. All right? And this Morkovich, which has been admitted in a verified complaint – you have to be careful when you put in a verified complaint – that she told him, do not pay this. So then the attorney has to step back and look at, okay, she's told me not to pay. What do I do with these funds? Do I distribute them? Do I set them aside? Part of the picture is the contract initially between Morkovich and Warlick. All right? They ended up in an adversarial relationship. Basically, Morkovich could not pay the bills. Mr. Warlick comes to her and says, look, we need to enter into an agreement. And if we don't, I'm going to have to go into collection. I can't represent you anymore. Or we can enter into this agreement, and I will represent you, and I'm not going to go to collections. All right? So there's an issue, a big issue, on the Morkovich contract in terms of there being duress. Is that contract even valid? Is over almost $250,000 reasonable for a parentage matter and related issues? So Mr. Lukashoni, looking at all this, made a decision, exercising his judgment, that it would be distributed to Morkovich, all right, pursuant to her demand and her request. I don't have any other questions on those rules. Well, all of those things are valid, but the issue of discretion doesn't appear to be necessarily raised in that set-aside issue. That gets decided upon hearing because, obviously, there is then a procedure that occurs subsequent to the set-aside to determine those issues. Right. If it was set-aside and it wasn't set-aside, and notwithstanding directives and the rules such as shall and things like that, there is still room, as indicated in the preamble, these rules are guidelines for attorneys, and in different circumstances they may undertake different action. And that's the decision that was made here. And I appreciate your questions about it. Ultimately, you know, it doesn't give rise to a cause of action, those sorts of things, but I won't repeat the brief. May I continue? Yes. Okay. So what this really boils down to, we have the jurisdiction issue, but this is a motion-to-dismiss case. Were claims properly fled? The breach of contract count, Judge Bowles correctly found that Mr. Lucacioni was not a signatory to any contract. Breach of fiduciary duty, basically she found that, in this case, there can't be any fiduciary duty between Mr. Warlick and Mr. Lucacioni. And that's especially clear when you look at the adversarial relationship that Morkovich had with Warlick in this contract. Did Mr. Lucacioni, who has a fiduciary obligation to Morkovich, really have a fiduciary duty to someone that she's in an adversarial contractual relationship with? And the answer is no. So Judge Bowles correctly ruled on the breach of fiduciary duty. Constructive trust was closely related, and in the complaint, it was tied to fiduciary duty, and that's why Judge Bowles indicated there's no constructive trust either that's been fled. Constructive trust, there's a mention in the brief of the appellant that maybe Mr. Lucacioni still has the money or the rest, and so we can impose a constructive trust. It's fled in the complaint that he distributed the money. The Morkovich court in the First District recognized that he distributed the money, so he doesn't have the money. In the final two new torts, tortuous interference of contract, clearly there was no unjustified inducement fled. All right? And that's a key element for that tort. More importantly, why – how could Mr. Lucacioni ever induce the breach if it was his client telling him, do not pay him my money, that's my money? So that's – that count bails as well. Well, I don't think there's a huge dispute that there could have been an attorney's lien filed, and maybe should have been, but then Mr. Lucacioni, if I have read things correctly, is saying, hey, that's going to compromise my client here in the Tishman case because then they'll see she's really needy and maybe they won't come in so high. And that's not Mr. Lucacioni's position whatsoever, and that's one of the issues we wanted to get to discovery on. That was, Mr. Warwick, something that he injected into his complaint, and I'm not going to get into the facts, but that's – some of those facts are going to be disputed once we get into discovery. How about promissory estoppel against Lucacioni? Respectfully, I didn't know that was going to be an issue today, but promissory estoppel. Can you have promissory estoppel against Lucacioni? Well, my gut is no. It's a matter of getting to it and explaining why not. That case is – that's the case that remains, right? That's one of the cases. I'm just arranging promissory fraud and conversion. But I guess finally, just to address the points, I'm actually out of time. Go ahead. You can wrap up. Just – I'll just wrap up. So we would respectfully ask the Court to affirm Judge Bolt's dismissal of accounts previously dismissed for prejudice at the trial court. Thank you. Mr. Warwick. I think the Court's rebuttal, I will only rebut those issues that were raised just now. First, I'm trying to take in the order that they were mentioned. Counsel said something doesn't rise to the level. There's no authority in his brief. There's no definition for that. There's a definition that I posed in my reply brief, but that's not a situation – that's not a defense to whether or not there was a contract. Second, you said that the – there's an admission that there was a requirement to pay more coverage. The admission is the so-called judicial admission. I mentioned that briefly earlier, so very briefly. There is no judicial admission. Judicial admission would be one such that you know you have knowledge of concrete facts. You have personal knowledge of them. They can't be an admission where you're talking about what somebody else did. And then unless you're Lewis Carroll and it's Alice in Wonderland, words mean what they mean. And the word ostensibly doesn't mean I admit something. Ostensibly means apparently. The adversarial relationship between myself and Markovitch, I was actually wondering where that came from. It's not on the record. It's not on the record because it isn't even true. Ostensibly, we can go back now to ostensibly, she wanted that money and she didn't want it to go to you. What kind of a relationship does that create? Look, what Mr. Brown was saying to the court was that there was this hostile relationship. He said that Mr. Warlick presented these encumbrance documents to her and said take them or leave them. That's nowhere in the record because that's not what happened. Markovitch was part of my life for seven years. I represented her. She had my cell phone number. She encompassed everything, my staff, my associates. And until this personal injury case was settled, and that's when I haven't spoken to her since, until she iced me. I don't think there's a better way of saying that. But until that happened, there was never an adversarial relationship. So to make those statements is, I find, kind of preposterous. The next thing that they said, that they had to make a decision based on the adversarial relationship and maybe some other factors, whether or not to comply with Supreme Court Rules of Professional Conduct 1.15 D&E, and they made a decision to go ahead and release the funds. Well, that was in the face of the contract that they had with Markovitch, the original letter of direction. That flies in the face of the contract they had with me. It flies, again, in the face of the Rules of Professional Conduct, which states specifically, they're not just guidelines. In fact, there's a case, I think it's in Red Mill Road, that says that the attorneys are obligated to know the rules. So I don't think they're just amorphous out there, you know, attorneys ought to behave like this. They're actually rules of professional conduct. Indeed, they do not give rise to a cause of action. I understand that. But they are also rules that set the standard of care, and they can't just be ignored whimsically, as has happened here. The constructive trust, well, we don't know if the money could be traced. And to Your Honor's point, Justice, you said, or you asked when the bankruptcy was filed. Well, the bankruptcy pending now with the adversarial complaint, I believe, was filed in 2018. But in 2016, early in that year, we filed a unilateral, a one, I'm not really good and familiar with bankruptcy law, but we filed as a one-creditor bankruptcy petition to address those issues that Your Honor was addressing and tying up the monies and making sure that they could be traced and they could be, you know, perhaps returned. Morakovich happened to fight that bankruptcy, and that was ultimately dismissed. And then she filed her own bankruptcy two years later. The unjustified, the question was, was there an unjustified inducement that would support, and the answer was that there would be nothing that would support the tortious interference with contractual relations. Well, the real test is whether or not there's malice. Well, the argument was that it was not pled. There was no unjustified inducement pled. Was counsel correct when he said that? I think there are, I don't agree with that, but I think there are two points to be made. One is that Counts 12 and 13, that was the first time that they had been pled. The other counts have been dismissed one other time. Go ahead. Do your grandpa. As to that count, the fact is it's pled that there was that unjustified inducement, but I believe the case law and what's been argued is whether or not that rises to the level of malice. And the way I submit to the Court is this way. If this dispute was over $244.55, then maybe it's de minimis and it's not malicious. But where the facts are, it's over $244,500. And then when one party relies on the other party, their good faith, and makes an arrangement, says, I won't do anything to harm your personal injury case, and you'll honor my security agreement, correct? And relies on that. And then the party that gets the money, so KMO gets the money, and instead of saying, we got the money, Mr. Warlick, we've got a dispute, Markovitch is telling us not to pay you, we know we're supposed to pay you, so, you know, we need to file an action. I want you to step in and file it. It's malicious what they did. Okay. Mr. Warlick, your time is up. We have other cases on the call. Thank you very much. We thank both parties for the quality of your evidence today. A written decision will be issued in due course.